UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHIVA STEIN and KEVIN McCARTY, derivatively on behalf of RCI HOSPITALITY HOLDINGS, INC., §§§§<br><br>Plaintiffs, §§§<br><br>vs. §§<br><br>NOUR-DEAN ANAKAR, YURA BARABASH, STEVEN L. JENKINS, ERIC LANGAN, LUKE LIROT, PHILLIP K. MARSHALL, ELAINE J. MARTIN, ALLAN PRIAULX, and TRAVIS REESE, §§§§§§§<br><br>Defendants, §§§<br><br>- and - §§<br><br>RCI HOSPITALITY HOLDINGS, INC., a Texas corporation, §§§<br><br>Nominal Defendant. § | Civil Action No. 4:22-cv-01310 |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     BACKGROUND OF THE DERIVATIVE ACTION ........................................... 2

        A.     Factual Background .................................................................................. 2

        B.     Procedural Background............................................................................ 4

               1.     The Litigation Demands ................................................................ 4

               2.     Refusal of the Litigation Demands ............................................. 5

               3.     The Inspection Demand ................................................................ 5

               4.     The Initiation and Litigation of the Derivative Action ............................. 5

               5.     The Mediation and Settlement .................................................... 7

III.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL.................................... 9

        A.     Applicable Legal Standards Favor Granting Preliminary Approval...................... 9

        B.     The Settlement is Within the Range of Possible Approval and Thus
               Warrants Preliminary Approval ............................................................ 10

               1.     The Proposed Settlement is the Product of Arm's
                      Length Negotiations.............................................................. 11

               2.     The Complexity, Expense and Likely Duration of
                      the Derivative Action .............................................................. 13

               3.     The Stage of the Proceedings and the Amount of
                      Discovery Completed............................................................... 15

               4.     Factual and Legal Obstacles to Plaintiffs Prevailing
                      on the Merits ...................................................................... 16

               5.     The Range of Possible Recovery and Certainty of Damages ................. 17

               6.     The Opinions of Counsel, Plaintiffs, and Current RCI Stockholders....... 18

        C.     There Are No "Obvious Deficiencies" in the Proposed Settlement,
               Which Warrants Preliminary Approval and Consideration By Current
               RCI Stockholders ................................................................................ 18

IV.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED ....................... 19

V.    PROPOSED SCHEDULE OF EVENTS ......................................................................... 21

VI.    CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bacas v. Way*,
No. 4:07-cv-456, 2008 U.S. Dist. LEXIS 23025 (S.D. Tex. Mar. 20, 2008) ........................19

*Bushansky v. Armacost*,
2014 WL 2905143 (N.D. Cal. June 25, 2014) ......................................................................21

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)....................................................................................................12

*Evans on behalf of United Dev. Funding IV v. Greenlaw*,
2018 U.S. Dist. LEXIS 80569 (N.D. Tex. May 14, 2018) .........................................11, 14, 16

*Feuer v. Zuckerberg*,
2021 WL 4552160 (Del. Ch. Oct. 5, 2021),
*cert. denied,* 2021 WL 5579655 (Del. Ch. Nov. 29, 2021) ...................................................13

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)................................................................................................................19

*In re AT&T Corp.*,
455 F.3d 160 (3rd Cir. 2006) .................................................................................................17

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................................................................12

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996)................................................................................................16

*In re Chickie's & Pete's Wage and Hour Litig.*,
No. 12-cv-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) .................................................12

*In re Corrugated Container Antitrust Litig.*,
659 F.2d 1322 (5th Cir. 1981) .................................................................................................9

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12
Litig.*,
447 F. Supp. 2d 612 (E.D. La. 2006)......................................................................................16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................................10

*In re NVIDIA Corp. Derivative Litig.*,
No. 06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)................................................14

*In re OCA, Inc.*,
   2008 U.S. Dist. LEXIS 84869 (E.D. La. Oct. 17, 2008) .......................................................18

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................................16

*In re Rambus Inc. Derivative Litig.*,
   No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009).................................21

*In re RCI Hospitality Holdings, Inc. Securities Litigation*,
   No. 4:19-cv-01841-AHB (S.D. Tex.) ...............................................................................15

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001)....................................................................................19

*Karstedt v. Isenberg, et al.*,
   No. 4:07-CV-00509, slip op. (S.D. Tex. May 14, 2008) .....................................................19

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) .............................................................................. *passim*

*McNamara v. Bre-X Minerals Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002)......................................................................................9

*Mohammed v. Ells*,
   No. 12-cv-1831-WJM-MEH (ECF No. 83) (D. Colo. April 18, 2014) ...................................21

*Norfolk Cnty. Ret. Sys. v. Jos. A. Bank Clothiers, Inc.*,
   2009 WL 353746 (Del. Ch. Feb. 12, 2009), *aff'd,* 977 A.2d 899 (Del. 2009) .......................13

*Pearson v. Ecological Sci. Corp.*,
   522 F.2d 171 (5th Cir. 1975) ...........................................................................................9

*Pfeiffer v. Toll*,
   989 A.2d 683 (Del. Ch. 2010).........................................................................................16

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) .........................................................................................10

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..................................................................12

*Schwartz v. TXU Corp.*,
   2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005).....................................................18

*Sved v. Chadwick*,
   783 F. Supp. 2d 851 (N.D. Tex. 2009) ................................................................... *passim*

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ......................................................................12

**Statutes**

Tex. Bus. Org. Code § 21.218 ............................................................................................5

Tex. Bus. Org. Code §21.553 ..............................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... *passim*

Fed. R. Civ. P. 23.1 ................................................................................................ *passim*

Plaintiffs Shiva Stein ("Stein") and Kevin McCarty ("McCarty") (collectively, "Plaintiffs") respectfully request that the Court: (a) grant preliminary approval of the Stipulation and Agreement of Settlement dated October 10, 2023 (the "Stipulation" or "Settlement") and filed contemporaneously herewith;[1] (b) approve the form of notice of the Settlement to be provided to current shareholders of RCI Hospitality Holdings, Inc. ("RCI" or the "Company"); and (c) schedule a hearing to consider final approval of the Settlement. This Motion is based on the Stipulation, the arguments and authorities cited herein, and such additional evidence as may be required by the Court.

## I.     PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in support of preliminary approval of the proposed Settlement of the above-captioned shareholder derivative action (the "Derivative Action"). The Settlement completely and finally resolves the derivative claims asserted in this Derivative Action by Plaintiffs on behalf of RCI.

The Settlement is the result of hotly contested litigation, followed by extensive arm's-length negotiations between the parties to the Derivative Action (the "Parties"), who were assisted in their negotiations by a highly experienced neutral mediator, Michelle Yoshida, Esq. ("the Mediator" or "Ms. Yoshida") of the mediation, arbitration, and dispute resolution firm Phillips ADR Enterprises ("Phillips ADR").  In sum, the proposed Settlement calls for the adoption and implementation of a series of significant corporate governance measures (the "Corporate Governance Measures") at RCI, including the addition of two new qualified, independent directors to RCI's Board of Directors (the "Board"), which are designed to enhance the way RCI is governed overall and help prevent a recurrence of the events and alleged misconduct that gave rise to this

---

[1]     All capitalized Terms herein have the same meaning as in the Stipulation.

Derivative Action.  Both the litigation of this Derivative Action and the negotiation of the Corporate Governance Measures were adversarial and hard-fought by the sophisticated Parties, and Plaintiffs strongly submit that the Settlement constitutes an appropriate resolution of a derivative case of substantial complexity.

As such, the Settlement confers substantial benefits upon RCI and Current RCI Stockholders and is an excellent resolution for RCI.  As a result of the comprehensive benefits obtained in the Settlement, RCI and Current RCI Stockholders are positioned to reap the long-term benefits of strong corporate governance by virtue of the Corporate Governance Measures.

Plaintiffs respectfully request that the Court enter the [Proposed] Preliminary Approval Order (the "Scheduling Order") attached to the Stipulation as Exhibit B: (a) granting preliminary approval of the Settlement; (b) directing that notice be provided to Current RCI Stockholders; and (c) scheduling a final hearing, at which the Court will consider final approval of the Settlement, the agreed-to Fee and Expense Amount for Plaintiffs' Counsel, and the nominal Service Awards for Plaintiffs.  In determining whether preliminary approval is warranted, the narrow issue before the Court is whether the Settlement is within a range of what might be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Current RCI Stockholders and that a hearing be scheduled for final settlement approval.

## II.       BACKGROUND OF THE DERIVATIVE ACTION

### A.       Factual Background

RCI is a publicly traded corporation incorporated under the laws of Texas and headquartered in Houston, Texas.  The Company owns and operates night clubs offering adult entertainment, restaurants, and bar operations in the United States.

Plaintiffs' Verified Shareholder Derivative Complaint (the "Complaint") alleges that on February 14, 2018, RCI disclosed that it suffered from material weaknesses related to its internal

controls over financial reporting.  According to RCI, these material weaknesses included: (1) ineffective controls over complex accounting and management estimates; (2) ineffective controls to support accurate accounting, reporting, and disclosures in the Company's 2017 Annual Report on U.S. Securities and Exchange Commission ("SEC") Form 10-K (the "2017 10-K"); and (3) ineffective controls to prevent unauthorized access to certain systems, programs, and data.  These material internal controls weaknesses were attributed to RCI not having "a sufficient complement of accounting and financial reporting personnel with an appropriate level of knowledge to address our financial reporting requirements."  RCI subsequently disclosed the existence of the same material internal controls weaknesses on March 7, 2018, May 10, 2018, and August 9, 2018.

On December 31, 2018, RCI reported the existence of material weaknesses in RCI's internal controls over financial reporting as reported in the 2017 Form 10-K, as well as the following additional problem area: ineffective controls to ensure against comingling of cash between RCI's "Nightclubs" and "Bombshells" business lines and the review of journal entries used to record revenue transactions.  RCI further stated that the material weaknesses were due to the Company's failure to have "a sufficient complement of accounting, financial and information technology personnel with an appropriate level of knowledge to assess internal control risks, address known internal control weaknesses, and address the Company's overall financial reporting and information technology requirements."  RCI's then-outside independent auditor also expressed its opinion that "RCI [] did not maintain, in all material respects, effective internal controls over financial reporting as of September 30, 2018."  RCI subsequently disclosed the existence of the same areas of material weaknesses related to RCI's financial reporting on March 1, 2019.

On May 10, 2019, RCI announced that it could not timely file its Quarterly Report on SEC Form 10-K for the second quarter of fiscal year 2019.  The Company disclosed that in response to the publication of a series of media reports in mid-and late 2018 (concerning certain related party transactions ("RPTs") which were allegedly omitted from RCI's financial statements), the SEC initiated an informal inquiry and a special committee of the Company's Audit Committee engaged independent outside counsel to conduct an internal review into those matters.  Several weeks later, on July 18, 2019, RCI disclosed that its independent registered public accounting firm had resigned.

On September 24, 2019, RCI announced that the SEC's informal inquiry had transitioned into a formal investigation.  RCI additionally disclosed a series of RPTs which had not previously been reported.

On September 21, 2020, the SEC announced that it had settled charges against RCI, defendant Eric Langan ("Langan"), and defendant Phillip K. Marshall ("Marshall") relating to RCI's disclosure controls, executive compensation and RPTs.

### B. Procedural Background

#### 1. The Litigation Demands

Following the events described above, on March 31, 2021 and April 15, 2021, respectively, Plaintiffs Stein and McCarty issued pre-suit litigation demands (the "Litigation Demands") to the Company's Board pursuant to Tex. Bus. Org. Code §21.553 ("§21.553").  The Litigation Demands each demanded that the Board undertake an independent internal investigation in good faith into the Individual Defendants' violations of Texas and/or federal law and commence a civil action against each of the Individual Defendants to recover for the benefit of the Company the amount of

damages sustained by the Company as a result of their breaches of fiduciary duties and other serious misconduct.

### 2.     Refusal of the Litigation Demands

By letters dated July 2, 2021, and July 12, 2021 (collectively referred to as the "Refusal"), RCI's Chief Compliance Officer responded to the Litigation Demands on behalf of the Board.  The Refusal stated that following receipt of the Litigation Demands, the Board had formed a "Special Committee" to evaluate the Litigation Demands, that the Special Committee had conducted an investigation, and that the Special Committee had determined to reject the Litigation Demands in their entirety.

### 3.     The Inspection Demand

Following receipt of the Refusal, on August 9, 2021, pursuant to Tex. Bus. Org. Code § 21.218 ("§21.218") and Texas common law, Plaintiffs issued a books and records inspection request (the "Inspection Demand") to the Company.  The Inspection Demand sought a production of Board-level internal books and records related to the Board's and/or Special Committee's evaluation of the allegations set forth in the Litigation Demands and the rejection of the Litigation Demands. On August 19, 2021, in response to the Inspection Demand, RCI produced certain non-public internal documents to Plaintiffs (the "Production").  Plaintiffs thereafter reviewed and analyzed the Production.

### 4.     The Initiation and Litigation of the Derivative Action

Following their review and analysis of the Production, Plaintiffs prepared the detailed Complaint for the benefit of RCI.  The Complaint asserted claims on behalf of the Company under

Texas law for breach of fiduciary duty against the Individual Defendants,[2] as well as Elaine J. Martin ("Martin") and Allan Priaulx ("Priaulx").  In addition, based in part on the non-public Production, the Complaint alleged that the Plaintiffs' Litigation Demands had been wrongfully refused by the Board.

On January 21, 2022, Plaintiffs filed a motion with the Court for leave to file the Complaint under seal, thus initiating the Derivative Action.  After that motion was granted, on February 23, 2022, Plaintiffs filed the operative Complaint under seal on behalf of RCI.

On April 4, 2022, RCI filed a motion to dismiss the Derivative Action, and the Individual Defendants, Martin, and Priaulx filed a separate motion to dismiss.  The defendants' respective motions to dismiss were brought pursuant to Federal Rules of Civil Procedure 23.1 ("Rule 23.1") and 12(b)(6) ("Rule 12(b)(6)") and argued that the Derivative Action should be dismissed because Plaintiffs: (1) failed to adequately allege wrongful refusal of the Litigation Demands; and (2) failed to state any claims upon which relief could be granted.

On May 5, 2022, Plaintiffs filed an opposition to the motions to dismiss.  On June 2, 2022, RCI, the Individual Defendants, Martin, and Priaulx jointly filed a reply in support of their motions to dismiss.

On March 31, 2023, the Court issued an Order (the "MTD Order") denying RCI's motion to dismiss in its entirety and denying the motion to dismiss filed by the Individual Defendants, Martin, and Priaulx in substantial part.  Specifically, the MTD Order concluded that Plaintiffs had adequately alleged pursuant to Rule 23.1 that the Litigation Demands had been wrongfully refused, and that all of Plaintiffs' claims for relief against the Individual Defendants had been adequately

---

[2]     The "Individual Defendants" are defendants Langan, Marshall, Nour-Dean Anakar, Yura Barabash, Steven L. Jenkins, Luke Lirot, and Travis Reese.

alleged pursuant to Rule 12(b)(6).  The MTD Order further concluded that because Martin and Priaulx joined the Board after the alleged misconduct in the Derivative Action, that the claims brought against those two individuals in the Derivative Action were dismissed.[3]

        5.     <u>The Mediation and Settlement</u>

Following the entry of the Court's MTD Order on March 31, 2023, the Settling Parties began discussing the potential for a resolution of the Derivative Action, and agreed to participate in a private, in-person mediation session (the "Mediation") for those purposes.  The Mediation was scheduled to take place on June 12, 2023 in Corona Del Mar, California, before Ms. Yoshida, an experienced neutral PADRE mediator.

In light of the Settling Parties' decision to explore potential resolution of the Derivative Action and participate in the Mediation, on May 11, 2023, the Settling Parties submitted a Joint Motion to Stay Pending Mediation to the Court, which was granted on June 5, 2023.

On May 26, 2023, the Settling Parties exchanged and submitted to the Mediator detailed mediation statements setting forth their respective views of the strengths and weaknesses of the claims and defenses in the Derivative Action. In addition, in advance of the Mediation, Plaintiffs submitted to Defendants a comprehensive set of proposed corporate governance reforms designed to address the events and deficiencies alleged in the Derivative Action.

On June 12, 2023, the Settling Parties attended the full day, in-person Mediation in California, overseen by Ms. Yoshida.  At the conclusion of the Mediation, the Settling Parties were able to reach an agreement in principle regarding the substantive terms of the settlement, including the set of Corporate Governance Measures which RCI would adopt and implement as

---

[3]     Accordingly, since the MTD Order was issued by the Court on March 31, 2023, Martin and Priaulx have been (and remain) non-parties to the Derivative Action.

consideration for the Settlement, as reflected in a term sheet attached as Exhibit A to the Stipulation.

For several weeks after the Mediation, with the assistance and under the oversight of the Mediator, the Settling Parties conducted separate negotiations regarding the amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel in consideration of the substantial benefits achieved for RCI and its stockholders through the initiation, litigation, and settlement of the Derivative Action.  After the Settling Parties reached an impasse as to this final remaining term, on July 21, 2023, Ms. Yoshida issued a double-blind mediator's proposal to the Settling Parties (the "Mediator's Proposal").  On July 24, 2023, the Settling Parties each accepted the Mediator's Proposal, pursuant to which Defendants and their insurer have agreed to pay $1,200,000.00 in attorneys' fees and expenses to Plaintiffs' Counsel, subject to Court approval.  This final term completed the Parties' settlement negotiations.

Counsel for the Parties thereafter prepared the Stipulation, which was presented to RCI's independent, non-defendant members and which was executed on October 10, 2023.  As set forth in the Stipulation, RCI's independent, non-defendant members have unanimously approved a resolution reflecting their determination, in a good faith exercise of their business judgment, that: (a) the litigation and settlement efforts in the Derivative Action are the precipitating, substantial and material factor in the Board's agreement to adopt, implement, and maintain the Corporate Governance Measures for the agreed term as formal policies of RCI and as enforceable provisions of the Judgment to resolve the Derivative Action; (b) the Corporate Governance Measures confer substantial benefits on the Company and its shareholders; and (c) the Settlement and each of its terms are fair, reasonable, and in the best interests of the Company and its shareholders.

Accordingly, Plaintiffs request that the Court enter an order: (i) preliminarily approving the Settlement, (ii) approving the form and method for providing notice of the Settlement to Current RCI Stockholders; and (iii) scheduling a hearing for the Court to determine whether to finally approve the Settlement, the agreed-to Fee and Expense Amount for Plaintiffs' Counsel, and the nominal Service Awards for Plaintiffs.

## III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.   Applicable Legal Standards Favor Granting Preliminary Approval

The Fifth Circuit strongly favors settlement, a policy which is particularly compelling in shareholder derivative litigation because "such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp*., 714 F.2d 436, 455 (5th Cir. 1983) (internal citation omitted). Indeed, because of their highly favored status, derivative settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Pearson v. Ecological Sci. Corp*., 522 F.2d 171, 176 (5th Cir. 1975) (internal citation omitted); *see also Maher*, 714 F.2d at 455. Settlements of complex cases, like this Derivative Action, contribute significantly to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice, since a "just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1322, 1325 (5th Cir. 1981).

Under Rule 23.1, a derivative action may be settled, voluntarily dismissed, or compromised only with the Court's approval. Preliminary approval is the first of a two-step settlement approval process – final approval being the second step. *See, e.g., McNamara v. Bre-X Minerals Ltd.,* 214 F.R.D. 424, 426 (E.D. Tex. 2002). This Court will have before it detailed papers submitted in support of the Settlement prior to the final settlement hearing so that it may make a determination as to whether the Settlement is fair, reasonable, and adequate, and in the best interests of those

whose claims will be extinguished. *See Maher*, 714 F.2d at 455. Here, Plaintiffs seek only preliminary approval of the proposed Settlement and the Court's permission to notify Current RCI Stockholders of the Settlement's terms.

While Plaintiffs believe that the proposed Settlement ultimately merits this Court's final approval, the Court need only conclude at this juncture that a settlement of the derivative claims against the Individual Defendants falls within the range of possible approval. *Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995); *see also In re NASDAQ Mkt.-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

Courts in the Fifth Circuit look to the following six factors to determine whether a proposed settlement of a derivative action is fair, reasonable, and adequate: "(1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of plaintiff's counsel, the derivative plaintiff, and absent shareholders." *Sved v. Chadwick*, 783 F. Supp. 2d 851, 860–61 (N.D. Tex. 2009); *Reed v. Gen. Motors Corp.,* 703 F.2d 170 (5th Cir. 1983).

## B.      The Settlement is Within the Range of Possible Approval and Thus Warrants Preliminary Approval

Plaintiffs respectfully submit that the proposed Settlement is well within the range of possible approval.  The Settlement was negotiated at arm's-length by experienced and fully informed counsel with the oversight and assistance of the neutral Mediator, and provides

substantial benefits to RCI and Current RCI Stockholders, particularly in consideration of the risks (including the risk of no recovery) of continued litigation.  Further, the separately and subsequently agreed-upon Fee and Expense Amount was also negotiated at arm's-length by experienced and fully informed counsel with the oversight and assistance of the Mediator, and is the product of the double-blind Mediator's Proposal that was accepted by all Parties.

Notably, the independent non-defendant members of RCI's Board have unanimously approved a resolution reflecting their determination, in a good faith exercise of their business judgment, that: (a) the litigation and settlement efforts in the Derivative Action are the precipitating, substantial and material factor in the Board's agreement to adopt, implement, and maintain the Corporate Governance Measures for the agreed term as formal policies of RCI and as enforceable provisions of the Judgment to resolve the Derivative Action; (b) the Corporate Governance Measures confer substantial benefits on the Company and its shareholders; and (c) the Settlement and each of its terms are fair, reasonable, and in the best interests of the Company and its shareholders.  Stipulation § IV.

Consideration of the relevant legal factors further supports that the proposed Settlement is fair, reasonable, and adequate. Under the foregoing circumstances, the proposed Settlement easily satisfies the low threshold for preliminary approval.

1.    The Proposed Settlement is the Product of Arm's Length Negotiations

"In the absence of contrary evidence, the Court presumes there was no fraud or collusion behind the settlement." *Evans on behalf of United Dev. Funding IV v. Greenlaw*, 2018 U.S. Dist. LEXIS 80569, at \*10 (N.D. Tex. May 14, 2018). The hard-fought bargaining conducted by the Settling Parties, which ultimately caused and culminated in the proposed Settlement, highlights the absence of collusion and presumptive fairness of the Settlement.

As noted above, the terms of the Settlement were only agreed upon after contentious litigation efforts in the Derivative Action by the Parties, including Plaintiffs' near-complete triumph over motions to dismiss brought pursuant to Rules 23.1 and 12(b)(6). Settlement negotiations began shortly thereafter, and were only resolved after the Settling Parties participated in the full-day, in-person Mediation and engaged in continued negotiations spanning several weeks following the Mediation, overseen by Ms. Yoshida.  *See, e.g., Todd v. STAAR Surgical Co*., 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (approving settlement facilitated by "experienced mediator Michelle Yoshida of Phillips ADR"); *Satchell v. Fed. Express Corp*., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  Further, the subsequently and separately negotiated Fee and Expense Amount was only agreed upon after the Parties reached an impasse as to that lone remaining term and the double-blind Mediator's Proposal was made by Ms. Yoshida, which the Parties accepted.  This factor further demonstrates the fairness of the arm's-length Settlement because "the amount of attorneys' fees could not have affected the amount of Plaintiffs' recovery." *In re Chickie's & Pete's Wage and Hour Litig*., No. 12-cv-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014).

Where "the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex . . . litigation, the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). Moreover, each of the Settling Parties was represented by zealous and able counsel who possessed firm understandings of the strengths and weaknesses of the claims

and defenses in the Derivative Action, and thereby negotiated the terms of the Settlement assertively and in good faith. Stipulation § II-III. Thus, this factor weighs in favor of preliminary approval. *See Maher*, 714 F.2d at 456–57 ("other factors favoring approval of the settlement here are . . . that the settlement was the result of arm's-length negotiation . . . and intelligent evaluation of the lawsuit by the parties and their capable counsel").

2. The Complexity, Expense and Likely Duration of the Derivative Action

The uncertainties and vagaries of further litigation of the Derivative Action demonstrate that the proposed Settlement is within the range of approval, and that preliminary approval should be granted. Although Plaintiffs believe the claims asserted in the Derivative Action were meritorious, there existed significant risks in continuing to prosecute the Derivative Action. As mentioned above, shareholder derivative actions are "notoriously difficult and unpredictable." *Maher*, 714 F.2d at 454. Litigation of the complex facts and issues presented in the Derivative Action would not likely be an exception. *See Sved*, 783 F. Supp. 2d at 861 (finding derivative action was complex where shareholder alleged claims for breaches of fiduciary duty).

Although the Derivative Action had already survived motions to dismiss brought under Rules 23.1 and 12(b)(6) – no small feat in derivative litigation, particularly where shareholders allege that their pre-suit litigation demands were wrongfully refused[4] – Plaintiffs acknowledge that Defendants would continue to vigorously dispute the claims asserted. Plaintiffs further believe that Defendants would likely have also taken the position that in order to prevail on their substantive claims for relief, Plaintiffs would have the added burden of proving, beyond the

---

[4] "Of the two potential routes presented by Rule 23.1 -- pleading demand excusal with particularity or making a pre-suit demand -- the former is a steep road, but the latter is steeper yet." *Feuer v. Zuckerberg,* 2021 WL 4552160, at \*5 (Del. Ch. Oct. 5, 2021), *cert. denied,* 2021 WL 5579655 (Del. Ch. Nov. 29, 2021); *see also Norfolk Cnty. Ret. Sys. v. Jos. A. Bank Clothiers, Inc.,* 2009 WL 353746, \*7, n. 51 (Del. Ch. Feb. 12, 2009) ("Demonstrating wrongful refusal is more daunting than demonstrating demand futility."), *aff'd,* 977 A.2d 899 (Del. 2009).

pleading stage, that the Litigation Demands were wrongfully refused.  Plaintiffs believed that their claims were strong, that wrongful demand refusal was and is exclusively a pleading issue in a derivative action, and as such that they would not have been required to prove wrongful demand refusal beyond the pleading stage, but nonetheless recognized the significant risk, expense, and length of continued proceedings necessary to prosecute this Derivative Action though trial, and potentially through appeal(s). The Settling Parties here already fully briefed motions to dismiss and had litigation continued, there is little question that such litigation would have been every bit as vigorous and adversarial as it had been up until the point of Settlement. *See Evans*, 2018 U.S. Dist. LEXIS 80569 at *11 ("If litigation were to proceed, this case would likely continue to be hotly contested. This factor weighs in favor of final approval.").

Further, even if liability were established, the amount of recoverable damages would still have posed significant issues and would have been subject to additional litigation. *See, e.g., In re NVIDIA Corp. Derivative Litig.,* No. 06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) (preliminarily approving proposed derivative settlement after balancing the risks faced by plaintiffs and defendants). Plaintiffs' Counsel also considered the best interests of RCI, as the Derivative Action is brought on RCI's behalf, including the risks that ongoing litigation could result in loss or substantial diminution of available directors' and officers' insurance and financial hardship to RCI, with risk that the Individual Defendants (absent insurance) would be unable to satisfy fully any judgment that might be entered in the Derivative Action.

It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court. Add to this post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex trial and the benefits of the Settlement become all the more apparent. The proposed Settlement eliminates these and other risks of continued

14

litigation, including the very real risk of no recovery after several more years of litigation, while providing RCI and Current RCI Stockholders with substantial benefits for the long-term. *See, e.g., Maher*, 714 F.2d at 466 (derivative settlement approved where "the parties' conclusion that any possible benefit to Zapata from pursuing the causes of action would be more than offset by the additional cost of litigation was based on an intelligent and prudent evaluation of their case").[5]

3.   The Stage of the Proceedings and the Amount of Discovery Completed

Here, significantly, before reaching an agreement to resolve the Derivative Action, the Settling Parties vigorously litigated in connection with defendants' motions to dismiss, and "obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it." *See Sved*, 783 F. Supp. 2d at 861.  Following the Court's issuance of the MTD Order, Plaintiffs' Counsel agreed to participate in settlement negotiations and ultimately agreed to the proposed Settlement only after conducting a robust, multi-faceted factual and legal investigation, which included their review and analysis of, *inter alia,* the confidential Production, their review and analysis of other confidential information and materials provided by the Company specifically in connection with the Mediation and the Parties' subsequent settlement negotiations, Company press releases, public statements, SEC filings, media and analyst reports, and pleadings in the related, settled securities class action captioned *In re RCI Hospitality Holdings, Inc. Securities Litigation,* No. 4:19-cv-01841-AHB (S.D. Tex.).  The accumulation of the information discovered through those considerable efforts permitted Plaintiffs' Counsel to be well-informed in evaluating the risks of continued litigation and to have sufficient information to support the

---

[5]     *Maher* recognized that the avoidance of further litigation expenses "both monetarily in the form of litigation fees and expenses, and non-monetarily in the form of disruption and distraction of management, and threatened impairment of the Corporation's credit and goodwill, are important and valid reasons for seeking a settlement, and may warrant its approval." *Maher*, 714 F.2d at 467.

decision regarding the fairness, adequacy, and reasonableness of the proposed Settlement. *Sved*, 783 F. Supp. 2d at 861.

Here, Plaintiffs' Counsel took "affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair," and thus, "the Court may rely on counsel's judgment that the information gathered was enough to support a settlement." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.,* 447 F. Supp. 2d 612, 621 (E.D. La. 2006) (internal citations omitted). Thus, the stage of proceedings supports preliminary approval, as the Plaintiffs obtained and carefully considered "sufficient information to gauge the strength and weaknesses of [their] claims and the probability of [their] success on the merits." *Evans*, 2018 U.S. Dist. LEXIS 80569, at *12.

### 4.   Factual and Legal Obstacles to Plaintiffs Prevailing on the Merits

As stated above, while Plaintiffs believed at all times and continue to believe that their claims are meritorious, establishing liability in the Derivative Action was hardly a foregone conclusion. In their capacity as fiduciaries of the Company and its stockholders, Plaintiffs and their counsel were obligated to weigh their belief in the strength of their claims against the reality that "the odds of winning [a] derivative lawsuit [are] extremely small." *In re Pac. Enterprises Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995).

Although Plaintiffs survived significant pleading stage hurdles (which most derivative cases do not), Plaintiffs acknowledge the risk that the Derivative Action may not later have withstood Defendants' anticipated motions for summary judgment, and the risk that they may not have eventually prevailed at trial. Even if and once these additional hurdles were overcome, the merits of the Derivative Action, which rely in part on the Individual Defendants' alleged failure to conduct proper oversight, still pose significant risks and challenges to litigate, and Defendants raised additional defenses. *See, e.g., Pfeiffer v. Toll,* 989 A.2d 683, 693 (Del. Ch. 2010); *In re*

*Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996). Establishing the requisite level of causation and damages would also be complex and difficult, and would have likely presented a "battle of the experts." *See Sved*, 783 F. Supp. 2d at 863 ("[i]n a complex litigation such as this [derivative] one, the parties often provide difficult and conflicting expert testimony at trial."). Thus, this factor also supports the Settlement's approval.

5.     The Range of Possible Recovery and Certainty of Damages

Notably, "[u]nlike a class action, a derivative suit is being brought on behalf of the corporation, so the recovery, if any, must go to the corporation." *Id.* (internal citations omitted). Even assuming liability was proven, litigation surrounding the amount of damages would itself have consumed more time and expense, and in no way would guarantee a more favorable outcome for RCI, on whose behalf the Derivative Action is brought. *See, e.g., In re AT&T Corp.,* 455 F.3d 160, 170 (3rd Cir. 2006). As discussed in the preceding section, the issue of damages would have been contentious and the subject of competing expert opinions, and the Settling Parties would have had serious disagreements about how damages would be calculated at trial. In sum, even if Plaintiffs prevailed at trial, Plaintiffs had very little certainty on the amount of damages to RCI.

The Settlement is a highly positive resolution for RCI and Current RCI Stockholders of a potentially complex and costly case. The substantial benefits to RCI in the form of the Corporate Governance Measures, which include, *inter alia,* the addition of two new independent directors to the Board, enhancements to the Company's Related Party Transaction Policy, enhanced duties of RCI's Disclosure Committee, and the adoption of a new recoupment policy for recovery of erroneously awarded incentive compensation, directly address the wrongdoing alleged and attempt to prevent future reoccurrences.  This represents a highly positive outcome for RCI, which strongly outweighs the uncertainty of damages in this Derivative Action.

6.     The Opinions of Counsel, Plaintiffs, and Current RCI Stockholders

"When evaluating the fairness, adequacy and reasonableness of a settlement, courts consider the opinions of experienced counsel." *Schwartz v. TXU Corp.,* 2005 U.S. Dist. LEXIS 27077, at *71 (N.D. Tex. Nov. 8, 2005). "In a case like this one, where the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Id.*(internal citations omitted). Here, all counsel, each of whom are experienced in complex class and shareholder litigation, are in favor of the Settlement. *See* Stipulation, § II, III. The views of Current RCI Stockholders will not be known until after notice is disseminated.

Based on Plaintiffs' thorough review and analysis of the relevant facts, allegations, defenses, and controlling legal principles, Plaintiffs believe that the Settlement set forth in the Stipulation is fair, reasonable, and adequate, and confers a substantial benefit upon RCI and Current RCI Stockholders.   Indeed, based upon their thorough evaluation, Plaintiffs have determined that the Settlement is in the best interests of RCI and Current RCI Stockholders and have agreed to settle their claims and putative claims upon the terms and subject to the conditions set forth in the Stipulation. This belief, informed by Plaintiffs' Counsel's extensive involvement in this Derivative Action and the prolonged, arm's-length settlement negotiations, coupled with decades of collective experience in stockholder derivative actions, further weighs in favor of preliminary approval.

**C.     There Are No "Obvious Deficiencies" in the Proposed Settlement, Which Warrants Preliminary Approval and Consideration By Current RCI Stockholders**

The proposed Settlement has no "obvious deficiencies" precluding preliminary approval. *In re OCA, Inc.,* 2008 U.S. Dist. LEXIS 84869, at *37 (E.D. La. Oct. 17, 2008). There was no

collusion between the Settling Parties, the Settlement is the product of a mediation and negotiation process overseen by the experienced, neutral Mediator, and the Corporate Governance Measures to be adopted and implemented at RCI are substantial. The Fee and Expense Amount was separately negotiated at arm's length, is the product of the Mediator's Proposal which was accepted by the Parties, and is within the range of agreed-to fees approved in other derivative cases by this Court.[6]

Consensual resolution of attorneys' fees is the ideal toward which litigants should strive. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Where, as here, there is no evidence of collusion or other detriment to the parties, the court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001).

As such, the agreed-to Fee and Expense Amount is appropriate in light of Plaintiffs' Counsel's efforts in initiating, litigating, and resolving the Derivative Action, and the substantial benefits conferred on RCI and Current RCI Stockholders thereby. Accordingly, the separately negotiated and agreed-to Fee and Expense Amount should be preliminarily approved and submitted to Current RCI Stockholders for their review.

## IV.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED

Rule 23.1 provides that the Court shall direct the manner in which notice should be disseminated, and that the Derivative Action shall not be dismissed without the Court's approval of the Settlement agreement.

---

[6]    *See, e.g., Bacas v. Way*, No. 4:07-cv-456, 2008 U.S. Dist. LEXIS 23025, at *2 (S.D. Tex. Mar. 20, 2008) ($3 million in fees in derivative settlement with corporate governance reforms addressing allegations made in complaint); *Karstedt v. Isenberg, et al*., No. 4:07-CV-00509, slip op. (S.D. Tex. May 14, 2008) (approving attorneys' fees and expenses of $2.85 million for corporate governance reforms).

In accordance with Rule 23.1 and due process requirements, the Settling Parties have agreed to a multi-faceted notice plan that will advise Current RCI Stockholders of the terms of the proposed Settlement, the date of the final settlement approval hearing, and the deadline for objecting to the proposed Settlement, among other things. As detailed in the Stipulation, Notice will be provided to Current RCI Stockholders as follows: within ten (10) business days after the Court's entry of the proposed Scheduling Order, RCI shall cause: (i) the publication of the Summary Notice one time in *Investor's Business Daily*; (ii) the posting of the Notice and the Stipulation (including exhibits) on the "Investor Relations" portion of the Company's website, the address of which will be contained in the Notice and Summary Notice and which posting shall be maintained through the date of the Settlement Hearing; and (iii) the filing with the SEC of a Current Report on Form 8-K, attaching the Notice and the Stipulation (including exhibits).

The proposed forms of notice (attached as Exhibits C and D to the Stipulation) set forth, *inter alia*, the date and location of the final Settlement Hearing, the Parties' contentions, the reasons for the Settlement, and the procedure for objecting to the Settlement, including the Fee and Expense Amount.  The proposed Notice is therefore reasonably calculated to "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Maher*, 714 F.2d at 451–452 (notice in a derivative settlement satisfies Rule 23.1 and due process requirements where it describes the "nature of the pending action [and] the claims asserted therein," "the general terms of the proposed settlement," "the time and place for the settlement hearing and their right to participate therein," and provides "sufficient information for [stockholders] to make a rational decision whether they should intervene in the settlement approval procedure").

The proposed forms of Notice fully comply with Rule 23.1 and due process and is similar to those approved in other complex stockholder derivative and stockholder class action cases. *See e.g., Mohammed v. Ells*, No. 12-cv-1831-WJM-MEH (ECF No. 83) (D. Colo. April 18, 2014); *Bushansky v. Armacost*, 2014 WL 2905143 (N.D. Cal. June 25, 2014) (requiring notice plan to include a link on defendant's investor relations website, a press release to be issued by defendant, and a Form 8-K filing with the SEC); *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (approving settlement where notice included posting on corporation's website, press release, and a Form 8-K filing with the SEC).

The Settling Parties believe that this is the best notice practicable under the circumstances and respectfully request that it be approved. Stipulation, § V, 3.1-3.3.

## V.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Plaintiffs request the Court to establish dates by which, among other things, notice of the Settlement will be disseminated to Current RCI Stockholders, the date by which Current RCI Stockholders may comment on the Settlement, and to set a date for a final Settlement Hearing. As set forth in the Stipulation, if the Court preliminarily approves the Settlement, Plaintiffs propose the schedule set forth below.

| | |
|---|---|
| RCI to cause: (i) the publication of the Summary Notice one time in *Investor's Business Daily*; (ii) the posting of the Notice and the Stipulation (including exhibits) on the "Investor Relations" portion of the Company's website, the address of which will be contained in the Notice and Summary Notice and which posting shall be maintained through the date of the Settlement Hearing; and (iii) the filing with the SEC of a Current Report on Form 8-K, attaching the Notice and the Stipulation (including exhibits). | Within ten (10) business days after the entry of the Scheduling Order |

| Filing of Defendants' Counsel's affidavit or declaration with respect to dissemination of Notice of the Settlement | At least twenty-one (21) calendar days prior to the Settlement Hearing |
|---|---|
| Filing of Plaintiffs' motion for final approval of the Settlement, Fee and Expense Amount, and Service Awards | At least thirty-five (35) calendar days prior to the Settlement Hearing |
| Last day for Current RCI Stockholders to object and/or comment on Settlement | At least twenty-one (21) calendar days prior to the Settlement Hearing |
| Filing of Plaintiffs' responses to objections, if any | At least seven (7) calendar days prior to the Settlement Hearing |
| Settlement Hearing | Within sixty (60) calendar days after the entry of the Scheduling Order |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Settlement is within the range of possible approval and request that the Court preliminarily approve the Settlement, direct the issuance of the Notice of the Settlement to Current RCI Stockholders, and schedule the Settlement Hearing to consider final approval of the Settlement.

Dated: October 10, 2023

Respectfully submitted,

**SPONSEL MILLER GREENBERG PLLC**

*/s/ Thane T. Sponsel III*
Thane Tyler Sponsel III
Texas Bar No. 24056361, Federal ID No. 690068
Roger B. Greenberg
Texas Bar No. 08390000, Federal ID No. 3932
50 Briar Hollow Lane, Suite 370 W
Houston, Texas 77027
Telephone: (713) 892-5400
sponsel@smglawgroup.com
roger@smglawgroup.com

OF COUNSEL:

**POMERANTZ LLP**
Gustavo F. Bruckner
Samuel J. Adams
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
gfbruckner@pomlaw.com
sjadams@pomlaw.com

**SHUMAN, GLENN & STECKER**
Kip B. Shuman
100 Pine Street, Ste. 1250
San Francisco, CA 94101
Telephone: (303) 861-3003
kip@shumanlawfirm.com

**SHUMAN, GLENN & STECKER**
Rusty E. Glenn
600 17th Street, Suite 2800 South
Denver, CO 80202
Telephone: (303) 861-3003
rusty@shumanlawfirm.com

**SHUMAN, GLENN & STECKER**
Brett D. Stecker
326 W. Lancaster Avenue
Ardmore, PA 19003
Telephone: (303) 861-3003
brett@shumanlawfirm.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifieds that on this 10th day of October 2023, a true and correct copy of the foregoing ***Plaintiffs' Motion for Preliminary Approval of Settlement and Memorandum of Law in Support Thereof*** has been served electronically via the Court's CM/ECF system on all counsel of record.

*Thane T. Sponsel III*
THANE T. SPONSEL III

## **CERTIFICATE OF CONFERENCE**

The attached Stipulation of Settlement signed by all counsel demonstrates approval of the filing of this Motion by all parties.

*Thane T. Sponsel III*
THANE T. SPONSEL III

24